AVERY COMPANY, Appellant, v. T. A. POWELL, Respondent.

Kansas City Court of Appeals, November 17, 1913.

1. **BILLS AND NOTES: Fraud: Evidence to Support.** In a suit on the alleged guaranty of a note, the defendant attempted to set up fraud in obtaining the execution of the guaranty. There was no evidence of a trick, artifice or deception practiced on him at the time. Prior to this he had signed a contract agreeing to guarantee the particular note in question. There was no proof that this contract was obtained by fraud. In the absence of fraud in this first contract, the statement of the

agent to defendant, "Here are your notes," meaning the two notes he was to guarantee, and at the same time laying them face downward on the table, was not a fraudulent representation by conduct, and even if defendant could not, by reason of the absence of his spectacles, have seen the date when said note fell due, had he turned the note over, yet, as he said nothing about not being able to read without his spectacles, and did not ask what note he was guaranteeing, nor do anything to ascertain what note it was, but hurriedly wrote his name across the back and went on out of the room, there was no showing of fraud, and such defense must fail.

2. ———: ———: Negligence. In the absence of any misrepresentation calculated or likely to mislead, negligence in signing an instrument without knowing or making any effort to know the contents thereof will prevent one from avoiding the contract even though it turns out not to be what he supposed it was. If no fraud is practiced to induce him to refrain from reading it or having it read, his ignorance of the contents is not due to fraud but to his own negligence.

3. ———: Evidence: Burden of Proof. Fraud is never presumed. The burden of proving fraud rests on him who asserts it. And while fraud may be inferred when it is a legitimate deduction from all the facts in evidence, yet when a transaction under consideration may as well consist with honest and fair dealing as with a fraudulent purpose, it is to be referred to the better motive.

4. PLEADING: Answer Setting up Fraud: Not Verified. When the fraud charged pertains to the execution of the instrument sued on, the answer setting up fraud must be sworn to or it will not be sufficient to put fraud in issue.

Appeal from Callaway Circuit Court.—*Hon. D. H. Harris,* Judge.

REVERSED AND REMANDED (*with directions*).

*S. D. Stocks, C. M. Hay* and *H. N. Eversole* for appellant.

*A. C. Whitson* and *J. R. Baker* for respondent.

TRIMBLE, J.—Plaintiff sued the defendant as guarantor of a note executed by I. D. Kemp evidencing one of the four deferred payments on a threshing ma-

chine sold by plaintiff to Kemp. The price of the machine was $1050, and, as Kemp was not able to pay any cash at the time of purchase, the above amount was divided into four notes of $262.50 each, one due September 1, 1909, another November 1, 1909, the third September 1, 1910, and the fourth (the guaranty of which is the subject of this suit) due November 1, 1910; all four of the notes being secured by chattel mortgage on the machine.

Prior to the sale defendant had an arrangement with plaintiff's selling agent, that for every sale defendant assisted in making, he was to receive a part of the commission. Consequently when plaintiff's selling agent appeared in defendant's store and asked him if he knew where a machine could be sold, defendant told him of Kemp and went with the agent to see him. On the way, the agent agreed to give defendant fifty dollars if they succeeded in making a sale of the machine at $1050. It was ascertained, however, that Kemp could not pay anything down, and, as the plaintiff company would not sell to him on those terms, as he had no credit, defendant offered to guarantee one-half of the purchase price. The dispute is over which particular half defendant agreed to guarantee. The sale was made in July, 1909, and defendant insists that he agreed to guarantee the one-half falling due that year, namely, the note falling due September 1, 1909, and the one falling due November 1, 1909. Plaintiff contends that nothing was said about which two of the four notes defendant was to guarantee.

The proposition to buy the machine on the terms above indicated with defendant as guarantor of one-half the purchase price was mailed to the plaintiff company for its acceptance. Accompanying it went a statement, dated July 1, 1909, of the financial condition of defendant, signed by him; and also a contract, bearing his signature, stating that, for value received and in consideration of credit being extended to Kemp,

defendant would "guarantee the payment of certain of his notes given for the purchase price thereof to the amount of $525, as follows: Note for $262.50 due Nov. 1, 1909; Note for $262.50 due November 1, 1910."

The company accepted the proposed contract and sold the machine to Kemp. When it arrived where it was to be set up and delivered, plaintiff's selling agent had Kemp to execute the chattel mortgage on the machine and the four notes above mentioned, and also had defendant to sign a written contract of guaranty on the back of two of said notes. It is defendant's contention that the agent, by fraud, succeeded in getting him to guarantee the second note, due November 1, 1909, and the last note, due November 1, 1910, when the agreement and understanding was that defendant would guarantee only the *first two* notes falling due the same year and season the machine was purchased. Kemp paid the first note when due, and when the second note fell due, defendant assisted Kemp to the extent of $200 in paying that off. By reason of the payment of the first two notes, defendant insists the contract of guaranty has been fully performed.

The answer pleaded fraud in the obtaining of defendant's signature to the fourth instead of the first note; and, in another count, set up a counterclaim for the fifty dollars commission due him on the sale of the machine. The jury found a verdict for defendant assessing his damages under the counterclaim at $9.97, this being the balance of defendant's commission which, according to all the evidence, had remained unpaid. However, it had been credited upon the note before suit was instituted. So it was only in the event that defendant's charge of fraud was successful, that he would be entitled to this sum on his counterclaim.

There are many points raised and discussed by both sides. In the view which we take of the case, however, it is not necessary to notice more than one

or two of them. Stated together as one they are that under the pleadings and the evidence in the case there was no defense to the cause of action stated in plaintiff's petition. The answer was not verified. The fraud charged pertained to the execution of the contract. Hence the execution of the instrument sued on must be adjudged confessed. [Sec. 1985, R. S. Mo. 1909.] And fraud in the execution of the instrument sued on cannot be relied on if the answer is not verified. [Beck v. Obert, 54 Mo. App. 240.] Defendant contends that this rule is not applicable as no objection nor exception to evidence in support of fraud was made on this ground by plaintiff. The record shows there was, also that such objection and exception was preserved in the motion for new trial. However, even if there were no objection nor exception made and saved by plaintiff in the record, still there was ample evidence offered to affirmatively support plaintiff's cause of action, and defendant's evidence showed that none of the facts were disputed except the sole question as to fraud in obtaining defendant's guaranty to the note dated November 1, 1910, instead of to the note dated September 1, 1909. And as to this question of fraud, defendant's evidence is insufficient, as matter of law, to sustain it.

In the agreement of July 1, 1909, by which defendant agreed to guarantee two of the four notes, and upon which plaintiff agreed to sell Kemp the machine. it was stated that defendant would guarantee the note due November 1, 1910, which is the note now in controversy. Defendant does not claim that when he signed this contract he did not have his glasses, nor does he swear that he did not sign the agreement to guarantee. He would not say he did not sign it but only that one of the letters in his name did not look right. True, he says he did not agree *in writing* that day to guarantee any notes but only gave a written statement as to his financial ability. But this alone is

no evidence of any fact showing fraud in obtaining his signature to the agreement of that date.

So that on July 14, 1909, at the time the chattel mortgage and four notes were being presented to Kemp for execution, and two of the notes were to be guaranteed by defendant, there was *a written contract* between plaintiff and defendant *specifying that the latter would guarantee the payment of this particular note in controversy.* And, therefore, when the agent laid the two notes down on the table and said to defendant: "Here are your two notes" meaning that they were the two defendants was to guarantee, such statement, in the absence of fraud vitiating the above contract, was true since they were the two notes he had contracted in writing to guarantee. Consequently, in the absence of fraud vitiating the above contract of July 1, there was no element of fraud in the statement of the agent, "Here are your notes." They were the notes called for in the contract of July 1. There was no other act from which fraud could be inferred at the time the notes were guaranteed nor is there any evidence showing fraud at the time the guaranty was signed on the back of the note. Fraud is never presumed. The burden of proving fraud rests on him who asserts it. While fraud may be inferred when it is a legitimate deduction from all the facts and circumstances in evidence, it is never to be presumed, and when a transaction under consideration may as well consist with honest and fair dealing as with a fraudulent purpose, it is to be referred to the better motive. [Garesche v. MacDonald, 103 Mo. 1.]

We have carefully read over the entire evidence offered in support of the contention of fraud, and find none. Defendant was a business man, a storekeeper and, therefore, acquainted with business methods and the means of ascertaining what he was doing when he signed his name on the back of the notes. There is no evidence of any trick, artifice or deception practiced

by the agent on him at this time. Neither is there any evidence that the agent was in a hurry or hurried defendant. On the contrary it was defendant who was in a hurry. He was very busy in his store when the agent came for him to sign the guarantee and told the agent so. To this the agent replied that he wanted to get the whole matter closed up so he could go to the little station where the machine was and unload it. He wanted the defendant to go before the notary then, and told him it would not take long. Defendant went to the notary's office. The agent got out two notes and laid them face down on the table and said: ''Here are your notes. You can sign your name and go on back to the store if you are in a hurry.'' The defendant did not have his glasses it is true and probably could not read the fine print on the back of the note in which the guarantee was stated. The date at which the note fell due, however, was on the face of the note, and it is not shown whether he could have read it or not if he had looked. But, assuming that he could not have seen it without his glasses, he did not say anything to the agent about not having his glasses, nor did he ask the agent anything about which note he was guaranteeing. He took absolutely no precaution whatever to ascertain which of the four notes he was writing his name upon, but signed his name twice and went immediately back to his business. It is thus seen that the guaranteeing of the fourth instead of the first note was a result of defendant's own negligence and there is an entire absence of any testimony going to show fraud. The agent practiced no fraud upon defendant by which the latter was induced to refrain from reading or having read to him the notes he was guaranteeing. No misrepresentations were made. It cannot be said that the act of laying the notes upon the table and saying, ''Here are your notes,'' was a fraudulent piece of conduct on the part of the agent because the two were the notes he had contracted in writing to guarantee.

There should be real fraud in the opposite party to excuse the failure to know the contents of the instrument. [2 Bigelow on Fraud 526; Fitzgerald v. Fitzgerald, 100 Ill. 385.] In the absence of any misrepresentation calculated or likely to mislead, negligence in signing an instrument without knowing or making any effort to know the contents thereof will prevent one from avoiding the contract. The courts will turn a deaf ear to a man who seeks to get rid of a contract solely on the ground that its terms are not what he supposed them to be. [2 Bigelow on Fraud, 525.] A contract cannot be avoided merely because the person who executed it was ignorant of its contents, if no fraud was practiced to induce him to refrain from reading it or having it read, for in such case his ignorance is due to his own negligence. [14 Am. & Eng. Ency. of Law (2 Ed.) 134.] Persons must exercise at least ordinary prudence in their business dealings. [14 Am. & Eng. Ency. of Law (2 Ed.) 117.] Giving to defendant's testimony the widest and strongest effect there is nothing to show fraud for which the contract ought to be avoided. He knew he was going to the notary's to sign the guaranty and yet did not take his glasses, nor did he mention the fact to the agent that he could not read without them. In a hurry to get back to his own business, he signed the notes on the back without inquiry or investigation. The fact that he guaranteed a note falling due November 1, 1910, instead of one falling due September 1, 1909, resulted from his own negligence, and not from fraud of the other party. Such negligence would prevent his avoiding the contract on the ground of mistake as well as fraud had mistake been pleaded. [2 Pom. Eq. Jur. (3 Ed.), sec. 856.] Since there was a total failure to establish the defense of fraud, whether it be considered in the pleading for failure to verify or in the evidence adduced to support the charge, and a corresponding admission of the facts upon which plain-

tiff's cause of action rests, and since defendant is not entitled to recover the $9.97 unless relieved from the guaranty of said note (as that sum has already been credited thereon), the judgment is reversed and remanded with directions to set aside the verdict and enter judgment for plaintiff upon the cause of action stated in the petition and also judgment for plaintiff on defendant's counterclaim. All concur.